# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 16-930V
(not to be published)

```
* * * * * * * * * * * * * * * * * * * * * * *
KIRA HUGHES,                    *      Chief Special Master Corcoran
                                *
                                *
              Petitioner,       *
                                *      Filed: December 29, 2021
         v.                     *
                                *
SECRETARY OF HEALTH AND         *
HUMAN SERVICES,                 *
                                *
              Respondent.       *
                                *
* * * * * * * * * * * * * * * * * * * * * * *
```

*Braden Andrew Blumenstiel*, The Law Office of DuPont & Blumenstiel, Dublin, OH, for Petitioner.

*Lara Ann Englund*, U.S. Dep't of Justice, Washington, D.C. for Respondent.

### **DECISION GRANTING IN PART ATTORNEY'S FEES AND COSTS**[1]

On August 3, 2016, Patrice Moczek filed a petition on behalf of her minor daughter, Kira Hughes, seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] The Petition alleged that Ms. Hughes suffered from leg pain, headaches, and fatigue after receipt of the human papillomavirus ("HPV"), meningococcal, and tetanus diphtheria-acellular-pertussis ("Tdap") vaccines on August 15, 2013. *See* Petition ("Pet.") at 1. The claim was subsequently refined to contend that Ms. Hughes experienced complex regional

---

[1] Because this Decision contains a reasoned explanation for my actions in this case, it must be posted on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

pain syndrome and/or postural orthostatic tachycardia syndrome ("POTS") specifically due to the HPV vaccine. ECF No. 75 at 5, 7. The caption was amended in August 2019 after Ms. Hughes turned 18. ECF No. 70.

After some appellate practice at the level of the Federal Circuit (occasioned by Petitioner's failure to meet scheduling deadlines) was resolved, and then some intervening back-and-forth between the parties, I determined that the matter was amenable to disposition via ruling on the record, and invited Respondent to seek dismissal of the case based solely on the filed record and expert reports. After the parties completed briefing the matter, I issued a decision denying entitlement to compensation. *See* Decision, dated January 4, 2021. ECF No. 95 (the "Decision"). Petitioner appealed my determination, but her motion for review was denied. ECF No. 136. Petitioner did not seek Federal Circuit review a second time.

Petitioner has now filed a motion for a final award of attorney's fees and costs. Motion, dated December 1, 2021 (ECF No. 104). This is the sole fees request interposed in this matter. Petitioner requests a total of $41,966.44 in attorney's fees and costs for the work of one attorney, Mr. Braden Blumenstiel, performed between August 2019 and November 2021 (and thus does not request fees incurred before Mr. Blumenstiel's appearance—even though the case existed for three years before). ECF No. 104 at 12.[3] Respondent reacted to the fees request on December 14, 2021. *See* Response, December 14, 2021 (ECF No. 105). Respondent defers the calculation of the amount to be awarded to my discretion. *Id.* at 2–3.

For the reasons set forth below, I hereby **GRANT IN PART** Petitioner's motion, awarding fees and costs in the total amount of **$35,989.30**.

## ANALYSIS

I.      **Petitioner's Claim had Reasonable Basis**

Although the Vaccine Act only guarantees a reasonable award of attorney's fees and costs to successful petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length

---

[3] Petitioner does not seek attorney's fees for work performed on the matter in the prior period of time by Mr. James Blumenstiel (current counsel's father), and I therefore deem any such fees waived. I note, however, that the failure of prior counsel to act in a timely manner was the cause of the first round of appeals to the Court of Federal Claims and the Circuit—and also that prior counsel, in recognition of the foregoing, had agreed he would not seek fees for certain work associated with those appeals. Thus, it is likely any prior fees incurred in this matter would have been significantly reduced even had they been requested.

the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Importantly, establishing reasonable basis does not *automatically* entitle an unsuccessful claimant to fees, but is instead a threshold obligation; fees can still thereafter be limited, if unreasonable, or denied entirely.

A claim's reasonable basis[4] must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the *claim*—counsel's conduct is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. Reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation).

The standard for reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).[5]

Petitioner's claim was ultimately unsuccessful, but I find there was sufficient objective basis for it to entitle her to a fees and costs award. During the first year this case was initiated, Petitioner's claim was initially dismissed based on a failure to prosecute the claim, but Petitioner's motion for reconsideration was successfully appealed to the Court of Appeals for the Federal Circuit, and in the process of litigating that matter the Circuit deemed the claim to have sufficient merit to entitle Petitioner to the opportunity to present an expert opinion on it (despite misgivings

---

[4] Because this claim's good faith is not in dispute, I do not include a discussion of the standards applicable to that fees prong.

[5] *See also Chuisano*, 116 Fed. Cl. at 285 (cautioning against rigid rules or criteria for reasonable basis because they would subvert the discretion of special masters and stating that an amorphous definition of reasonable basis is consistent with the Vaccine Act as a whole).

I voiced about the claim's likely ultimate disposition. *See Moczek v. Sec'y of Health & Hum. Servs.*, 776 F. App'x 671, 675 (Fed. Cir. 2019). Even after the claim's restoration and consideration of the supplemental expert report, the matter ultimately met the same fate of dismissal as it had previously in 2017, but nevertheless I find Petitioner offered a reasonable opinion to support causation, and one that arose from the medical record as well.

Thus (and despite my growing sense that cases alleging POTS or other forms of dysautonomia after receipt of the HPV vaccine are in almost all cases without merit)[6], the extremely lenient standard governing reasonable basis determinations supports allowing a final award of fees and costs in this matter. There is otherwise no other reason to deny fees independent of reasonable basis.

## II.   Calculation of Fees

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis* exception"). *Avera*, 515 F.3d at 1348

---

[6] I have decided enough cases involving HPV vaccines and allegations of dysautonomia to recognize the inherent weakness of this category of claim. *See generally E.S v. Sec'y of Health & Hum. Servs.*, No. 17-480V, 2020 WL 9076620, at *40, 43 (Fed. Cl. Spec. Mstr. Nov. 13, 2020), *mot. for review den'd*, 154 Fed. Cl. 149 (2021) (dismissing petitioner's claim due to the inability to establish an injury and because petitioner's theories of causation were unreliable and not preponderantly supported by the evidence); *McKown v. Sec'y of Health & Hum. Servs.*, No. 15-1451V, 2019 WL 4072113, at *44–45 (Fed. Cl. Spec. Mstr. July 15, 2019) (finding that Petitioner failed to offer a persuasive, reliable medical theory in support of her claim that the HPV vaccine she received caused her to suffer POTS and eczema); *Johnson v. Sec'y of Health & Hum. Servs.,* No. 14-254V, 2018 WL 2051760, at *22–28 (Fed. Cl. Spec. Mstr. Mar. 23, 2018) (finding petitioner unsuccessful in establishing that the HPV vaccine could cause POTS or any similar symptoms of orthostatic intolerance); *Combs v. Sec'y of Health & Hum. Servs.*, No. 14-878V, 2018 WL 1581672, at *18–20 (Fed. Cl. Spec. Mstr. Feb. 15, 2018) (finding that petitioner's causation theory that the HPV vaccine could damage the autonomic nervous system was unsuccessful); *see also Otto v. Sec'y of Health & Hum. Servs.,* No. 16-1144, 2020 WL 4719285, at *3 (Fed. Cl. Spec. Mstr. June 17, 2020) (granting petitioner's dismissal of the petition but finding insufficient evidence in the record for petitioner to meet his burden of proof, and insufficient reliable scientific proof offered in support of his causation theory). In the future, I will be far more inclined to deny fees in cases that trod the same ground but without any new and far more reliable scientific or medical evidence to support the claim.

(citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests the following rates for her attorney, based on the years work was performed:

|  | **2019** | **2020** | **2021** |
|---|---|---|---|
| **Braden Blumenstiel (Attorney)** | $250.00 | $250.00 | $250.00[7] |
| **Paralegal** | $140.00 | $140.00 | $140.00[8] |

ECF No. 104 at 17–23.

Mr. Blumenstiel practice in Dublin, Ohio—a jurisdiction that has been deemed "in forum." Accordingly, he is entitled to the rates established in *McCulloch*. *See Ladue v. Sec'y of Health & Hum. Servs.*, No. 12-553V, 2018 WL 6978075, at *3–4 (Fed. Cl. Spec. Mstr. Dec. 14, 2018). However, Mr. Blumenstiel has previously been awarded (and billed at) only $225.00 per hour for all work performed in 2019 to 2021. *See, e.g., Lawrence v. Sec'y of Health & Hum. Servs.*, No. 14-835V, 2021 WL 5410246, at *2 (Fed. Cl. Spec. Mstr. Oct. 27, 2021); *Bailey v. Sec'y of Health & Human Servs.*, No. 15-1417V, 2021 WL 4270225, at *2 (Fed. Cl. Spec. Mstr. Aug. 18, 2021); *King v. Sec'y of Health & Human Servs.*, No. 17-625V, slip op. at 3 (Fed. Cl. Spec. Mstr. Jun. 10, 2020).[9]

I will therefore apply the previously awarded hourly rate of $225.00 per hour to the 126.3 hours billed by Mr. Blumenstiel in this matter, and I will correct the anomaly on August 2, 2021, which billed a significantly higher rate—$375.00 per hour—for 0.5 hours of work. I am also

---

[7] In one instance, however (on August 2, 2021), Mr. Blumenstiel charged a rate of $375.00 for 0.5 hours of work. ECF No. 104-2 at 7.

[8] In one instance, on October 11, 2021, Mr. Blumenstiel charged a rate of $145.00 for 3 hours of work. ECF No. 104-2 at 7.

[9] OSM Attorneys' Forum Hourly Rate Fee Schedules, https://www.uscfc.uscourts.gov/node/2914 (last visited Mar. 22, 2021).

correcting the anomaly in the paralegal rate, which charged $145.00 for 3 hours of work on October 11, 2021, instead of the requested rate of $140.00, also resulting in a reduction.[10]

Reductions do not end with correcting erroneously-requested rates. In early 2020, I noted on the docket of this case that in light of prior counsel's failure to adhere to my orders or use time extensions wisely, time spent after granting of additional extensions would not be reimbursed in future fees applications. In particular, on January 10, 2020, I noted that additional time spent between January 11-13, 2020 working on a Response to Respondent's pending Motion for Order to Show Cause would not be reimbursed. Docket Entry, dated January 10, 2020. Nevertheless, the billing invoices offered in this case establish that during this time Mr. Blumenstiel devoted 11.6 hours to the matter at a rate of $250.00 (corrected above to a rate of $225.00), and 0.3 hours of paralegal time at a rate of $140.00, for a total of $2,652.00—and has now requested its reimbursement despite my prior admonition. This amount will not be reimbursed.[11] I otherwise deem the new total of $32,990.00 spent on the matter, including costs for the motion for review, reasonable for the time devoted to the matter.

### III.    Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No.10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioners seek $2,999.30 in outstanding costs, including medical literature retrieval costs and costs associated with the work of a single expert, Michael Miller, M.D. ECF No. 104-2, Ex. 89.[12] Petitioner does not provide the amount of time spent by Dr. Miller in this case, let alone an

---

[10] Mr. Blumenstiel was requesting hourly rates of $375.00 for 0.5 hours worked, $250.00 for 126.3 hours worked, $145.00 for 3 hours worked, and $140.00 for 47.8 hours worked. This totals $38,967.14 in legal fees. After the reduction to the correct hourly rates of $225.00 for 126.8 hours (equaling $28,530.00) and $140 for 50.8 (equaling $7,112.00), the corrected total is $35,642.00.

[11] $225.00 multiplied by 11.6 equals $2,610.00. $140.00 multiplied by 0.3 equals $42.00. Adding $2,610.00 and $42.00 equals $2,652.00. Thus, the total correct amount of $35,642.00 minus $2,652.00 equals a new total of $32,990.00

[12] Petitioner does not seek cost reimbursement for the other experts who offered opinions in this case during the time prior counsel represented her, and I therefore deemed her to have waived this category of costs (along with other costs incurred in the first three years of the case's life).

hourly rate, but the total amount ($2,800.00) for his services in providing three expert reports was wholly reasonable for the work performed, and I do not find any reason to make any reductions. *Id.*; ECF Nos. 41-2, 76-2, 87-1. All other requested costs in this matter appear reasonable, and they shall also be awarded in full without reduction.

## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I **GRANT IN PART** Petitioner's Motion for Attorney's Fees and Costs, and award a total of **$35,989.30,** reflecting $32,990.00 in attorney's fees and $2,999.30 in costs, in the form of a check made jointly payable to Petitioner and her attorney Mr. Braden Blumenstiel.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[13]

**IT IS SO ORDERED.**

s/ Brian H. Corcoran<br>
Brian H. Corcoran<br>
Chief Special Master

---

[13] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.